DAN RICE CONSTRUCTION
COMPANY, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 95–274 C.

United States Court of Federal Claims.

June 12, 1996.

Joseph A. McManus, Jr., Washington, DC, for plaintiff.

Dean L. Grayson, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen and James M. Kinsella, Washington, DC, for defendant. Dudley Cannon, Jr., Office of Chief Counsel, NASA, Kennedy Space Center, of counsel.

## OPINION AND ORDER

TURNER, Judge.

This opinion addresses defendant's motion filed March 19, 1996 for summary judgment. For reasons stated below, we conclude that genuine issues of material fact remain regarding the issues covered in defendant's motion and, consequently, that defendant's motion must be denied.

### I

In June 1992, plaintiff entered into a construction contract with the National Aeronautics and Space Administration for the replacement of a Payload Spin Test Facility and for construction of additions to the Hazardous Operation Support Facility at Kennedy Space Center, Florida. The original contract amount was $6,958,220 and the original performance time was 500 calendar days. On September 24, 1992, plaintiff received the notice to proceed.

As part of the concrete foundation for the Support Facility structure, the contract required plaintiff to install 248 augured, grout-injected concrete piles. Plaintiff began work on this portion of the contract in the fall of 1992. When the piles were finished, they were examined and tested to insure integrity and lack of contamination. The inspection showed possible contamination of some of the piles. Plaintiff agreed to perform pile integrity tests upon a random sample of the piles, and a subcontractor was hired to perform these tests. The parties disagreed over the significance of the test results; defendant was not satisfied with the results. Thereafter, plaintiff removed the top two feet of all of the piles and performed additional integrity testing. Plaintiff claims that the piles were not found to be defective or nonconforming and brought this suit to recover for increased costs and delay allegedly incurred as a result of unnecessary repair work and reconstruction. Plaintiff contends that this work was beyond the scope of the original contract and constituted a constructive change to the contract. According to plaintiff, it is entitled to an equitable adjustment of not less than $200,000.

### II

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir. 1987). A "material fact" is a fact that could make a difference in the outcome of a case. *Curtis v. United States*, 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959). Only disputes over facts that might affect the outcome of a suit properly will prevent the court from entering summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party initially bears the burden of demonstrating the absence of any genuine issue of material fact. That burden may be discharged by showing the absence of evidence in support of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party has discharged its burden, the burden shifts to the party opposing the motion to demonstrate by sufficient evidence that a genuine issue of material fact remains. *Id.* at 324–25, 106 S.Ct. at 2553–54. "The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed.Cir.1987). In considering motions for summary judgment, we view evidence and draw inferences in a light most favorable to the non-moving party. *Litton Indus. Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985).

## III

Defendant alternately argues either that plaintiff volunteered to remove the tops of the piles and perform the additional testing or that plaintiff cannot prove that a government agent with contracting authority directed or approved any work beyond the scope of the original contract. With respect to the second alternative, the government asserts that absent a showing of authority, an agreement with the government cannot be enforced. Defendant cites extensive precedent requiring plaintiff to prove authority on the part of the government agent with whom it claims to have contracted.

Defendant asserts that there is no genuine issue of material fact related to the issue of authority because plaintiff has identified the NASA agents who directed the additional work as the Contracting Officer's Technical Representative (COTR), Donald Minderman, and project engineer, James O'Malley, neither of whom, defendant contends, had contracting authority. Def.'s Mot.Summ.J., App. at 152. Thus, defendant argues, as a matter of law, plaintiff cannot recover based on "unauthorized" modifications.

■ As defendant contends, contracting authority is a necessary element of a binding contract with the government. *See, e.g., City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *Shearin v. United States,* 25 Cl.Ct. 294, 297 (1992), *aff'd,* 983 F.2d 1085 (Fed.Cir.1992). However, under certain circumstances, a plaintiff may be able to establish the formation of a contract with the government even when the contracting agent lacked prior *express* actual authority. In these rare situations, it must be established either that the agent with whom the claimant negotiated had *implied* actual authority to make the agreement, *H. Landau & Co. v. United States,* 886 F.2d 322 (Fed.Cir.1989); *Branch Banking & Trust Co. v. United States,* 120 Ct.Cl. 72, 87, 98 F.Supp. 757, *cert. denied,* 342 U.S. 893, 72 S.Ct. 200, 96 L.Ed. 669 (1951); *Garza v. United States,* 34 Fed.

Cl. 1, 20 (1995); *Miller Elevator Co. v. United States,* 30 Fed.Cl. 662, 693 (1994), *appeal dismissed,* 36 F.3d 1111 (Fed.Cir.1994), or that an agent with authority ratified the agreement after it was made, *United States v. Beebe,* 180 U.S. 343, 354, 21 S.Ct. 371, 375–76, 45 L.Ed. 563 (1901); *Garza,* 34 Fed.Cl. at 21; *California Sand and Gravel, Inc. v. United States,* 22 Cl.Ct. 19, 27–28 (1990), *aff'd,* 937 F.2d 624 (Fed.Cir.1991), *cert. denied,* 502 U.S. 1057, 112 S.Ct. 934, 117 L.Ed.2d 105 (1992).

Plaintiff argues that either the Contracting Officer (CO) himself directed plaintiff to perform the additional work or that the CO was present when the COTR and project engineer directed plaintiff to perform this additional work, that the CO did not object to the requirement and, thus, that the CO's acquiescence constituted ratification. Alternately, plaintiff contends that NASA COTR Minderman had implied actual authority to order the modifications. Because we find that plaintiff has presented sufficient evidence of ratification to preclude summary judgment on the authority issue, we do not address plaintiff's implied actual authority argument.

■ Plaintiff contends that even if the COTR and project engineer lacked actual authority to require additional work which resulted in a constructive change, the agreement to perform additional work on the piles was ratified by the CO, who did have authority, and is therefore binding. "Ratification occurs when the principal, upon learning of an unauthorized act of its agent, acquiesces in, or affirms that act through his conduct." *HNV Cent. River Front Corp. v. United States,* 32 Fed.Cl. 547, 550 (1995). "For effective ratification, a superior must have authority to ratify, [and must have] knowledge of a subordinate's unauthorized act...." *California Sand and Gravel, Inc. v. United States,* 22 Cl.Ct. 19, 27 (1990). When a plaintiff claims that the government ratified an act of an agent who acted without authority,

such ratification can only be based upon a full knowledge of all the facts upon which the unauthorized action was taken.... Knowledge of the facts is the essential element of ratification, and must be shown

**4**

or such facts proved that its existences is a necessary inference from them. *United States v. Beebe,* 180 U.S. 343, 354, 21 S.Ct. 371, 375, 45 L.Ed. 563 (1901).

Here, plaintiff alleges that the CO participated in a November 25, 1992 telephone conference during which plaintiff was directed to perform the additional tasks. According to plaintiff, the CO kept silent during this telephone conference when the COTR and the project engineer directed plaintiff to perform additional testing and remove the tops of all of the piles. Plaintiff asserts that the CO's silence must be interpreted as ratification of these directions, since the CO was obligated to object or state that plaintiff shouldn't proceed if that was the government's position.

In support of the ratification argument, plaintiff provides evidence in the form of the deposition testimony of employees of both Dan Rice Construction and the defendant, all of whom testified that the Contracting Officer, John Tobin, was present during the November 25, 1992 telephone conference. James O'Malley, the project engineer, testified that it was at this telephone conference that the decision was made to remove the top two feet of all the piles. Pl.'s Opp. to Def.'s Mot. for Summ.J., App. at 50–51 (Dep. of James O'Malley). Merlin Jones, plaintiff's project manager for the contract, testified that Tobin was "a bystander" who "did not open his mouth" when the directive was given. Pl.'s Opp. to Def.'s Mot. for Summ.J., App. at 35 (Dep. of Merlin Jones). Schonda Briggs, a NASA employee, testified that she walked into the room with Tobin when he was in the middle of the November 25 telephone conference. Briggs testified that she originally thought she overheard Tobin directing plaintiff to perform the additional testing but was later informed that at this point in the conference, Tobin had simply been reiterating what the parties had already agreed on, and was not actually giving directions. Pl.'s Opp. to Def.'s Mot. for Summ. J., App. at 89–91 (Dep. of Shonda Briggs). Either way, Briggs's testimony supports plaintiff's contention that the decision to perform the additional testing occurred during the telephone conference.

Though not conclusive, plaintiff's evidence supports its contention that during the November 25, 1992 telephone conference, the COTR and project engineer directed plaintiff to remove the top two feet of all of the piles and to perform additional integrity testing. It is uncontested that Tobin was present at this telephone conference. We find this sufficient to raise a genuine issue of material fact as to whether plaintiff was directed by the COTR and the project engineer to perform additional work on the piles and whether the CO knew of and ratified the direction. If the CO agreed with the COTR and the project engineer's directive, confirmed it to plaintiff or kept silent during the telephone conference when the directive was given, he may well have ratified the directive.

## IV

Based on the foregoing, we find that there remain genuine issues of material fact which preclude summary disposition. Consequently, defendant's motion filed March 19, 1996 for summary judgment is DENIED.