**Bartola John PACETTI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–285T.

United States Court of Federal Claims.

Aug. 10, 2001.

---

Bartola J. Pacetti, Falls Church, VA, pro se.

David R. House, with whom were Claire M. Fallon, Acting Assistant Attorney General, Mildred L. Seidman, Chief, David Gustafson, Assistant Chief, Court of Federal Claims Section, Tax Division, Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Judge.

Plaintiff, Bartola J. Pacetti, appearing pro se, seeks a refund of several federal income tax payments. These income tax payments arise from a one hundred percent tax liability incurred by plaintiff for failure to file employment taxes for Triad Microsystems, Inc. (Triad). Complaint (Compl.) at 1. According to plaintiff, this tax liability results from a

breach of contract by the United States Army Aviation Missile Command (MICOM). Plaintiff seeks a refund of taxes and sale proceeds from property allegedly seized by defendant, the Internal Revenue Service (IRS), as payment for plaintiff's tax penalty for failure to pay employment taxes. Compl. at 4–5. Defendant moves to dismiss plaintiff's complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted. Motion of the United States to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof (Def.'s MTD) at iv.

For the following reasons, defendant's motion to dismiss is GRANTED.

## I. Background

Plaintiff's complaint arises from taxes and tax penalties assessed against plaintiff and Triad. Plaintiff is president of Triad and was the only officer responsible for filing the company's employment taxes for the fourth quarter of 1986, the second, third, and fourth quarters of 1987, and the second quarter of 1988. Compl. at 2. When plaintiff failed to pay these taxes, the IRS assessed a one hundred percent tax penalty against plaintiff, pursuant to § 6672. Internal Revenue Code (I.R.C.) § 6672 ("Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax ... shall ... be liable to a penalty equal to the total amount of the tax evaded."); Compl. at 2. According to plaintiff, Triad failed to pay the employment taxes for these periods because MICOM failed to honor the progress payments provision in its contract with Triad (Missile Contract) and the provisions of a related offset agreement (Guaranteed Offset Agreement) to which the IRS was also a party. Compl. at Count 1, ¶¶ 1–2.[1] MICOM's actions allegedly caused Triad to incur an additional $2,900,000 in interest and penalties. Id. at Count 1, ¶ 3. In particular, plaintiff asserts that MICOM's violations of the guaranteed offset agreement and failure to direct payment of $637,737.50 to the IRS caused Triad and plaintiff to incur other tax liabilities and continued accrual of penalties and interest. Compl. at Count 4.

Plaintiff also alleges that the IRS violated the Taxpayer Bill of Rights by disclosing tax information regarding plaintiff and Triad to unauthorized persons which, among other things, blocked Triad's receipt of funds due Triad under an Armed Services Board of Contract Appeals (ASBCA) judgment. Compl. at Count 3. According to plaintiff, this disclosure resulted in the IRS filing a false levy against Triad. Id. Plaintiff also alleges that the IRS failed to credit Triad's account for payments and failed to grant plaintiff or Triad an audit or hearing in violation of plaintiff's and Triad's civil rights. Compl. at Count 5. The IRS has also allegedly refused plaintiff's request for a hearing under I.R.C. § 6320, failed to audit or credit the account, and ignored plaintiff's requests for abatement and refund filed in 1991, 1993, 1996, 1997, 1998, and 2000. Compl. at Count 2, ¶ 2.

Additionally, plaintiff claims a one-half community property interest in the sale proceeds from his former marital home in Villa Park, California (Villa Park Property). Compl. at Count 2, ¶ 1. According to plaintiff, the IRS breached an agreement with his ex-wife, Renate Pacetti, to allow her to reinvest the sale proceeds from this home. Id. Instead the IRS put a lien on the proceeds which remain in escrow pending the outcome of Renate Pacetti's personal bankruptcy suit. Id. According to plaintiff, the IRS violated the civil rights of plaintiff, Triad, and Renate Pacetti regarding the sale proceeds from the Villa Park Property. Id. at ¶ 2. Plaintiff also contends that the IRS seized and sold his real property in Orlando, Florida in 1991 (Orlando Property). Compl. at 1. Plaintiff seeks a return of his community property interest in the Villa Park Property and sale proceeds from the Orlando Property. Compl. at 4.

Defendant moves to dismiss each of plaintiff's claims for lack or jurisdiction or failure to state a claim upon which relief can be granted. Def.'s MTD at iv.

## II. Discussion

### A. Standard of Review

Defendant bases its motion to dismiss on Rules 12(b)(1) and 12(b)(4) of the Rules of

---

1. The paragraphs of the complaint are not numbered sequentially. The paragraphs within each count, however, are numbered and the court refers to those paragraph numbers.

the Court of Federal Claims (RCFC). Rule 12(b)(1) provides for dismissal of a claim for which the court has a "lack of jurisdiction over the subject matter."[2] RCFC 12(b)(1). A court's subject matter jurisdiction depends on the "court's general power to adjudicate in specific areas of substantive law." *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed. Cir.1999). Rule 12(b)(4) provides for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." RCFC 12(b)(4). Rule 12(b)(4) addresses "the question of whether in a specific case a court is able to exercise its general power with regard to the facts peculiar to the specific claim." *Palmer,* 168 F.3d at 1313. Dismissal under Rule 12(b)(4) constitutes an adjudication on the merits. *Spruill v. Merit Sys. Prot. Bd.,* 978 F.2d 679, 686 (Fed.Cir.1992); *Maniere v. United States,* 31 Fed.Cl. 410, 419 (1994).

In weighing the evidence in a motion to dismiss, "whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *LaMirage, Inc. v. United States,* 44 Fed.Cl. 192, 196 (1999). On motion to dismiss, the court must presume that undisputed factual allegations in the complaint are true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir.1988); *La Mirage, Inc.,* 44 Fed.Cl. at 196.

### B. Issues

Plaintiff's alleged injuries stem from a number of specific circumstances, namely: 1) alleged breach by MICOM of the Missile Contract and Guaranteed Offset Agreement (Compl. at Counts 1, 2, and 4), as to which the court examines the issue of standing, collateral estoppel, failure to state a claim on which relief may be granted, and statute of limitations; 2) plaintiff's refund requests for years 1987, 1988, 1994, and 1995 and requests for abatement filed in 1991, 1993, 1996, 1997, 1998, and 2000 (Compl. at 4–5; Compl. at Count 2), as to which the court examines the issue of statute of limitations; 3) failure by the IRS to provide an administrative hearing (Compl. at Count 2), as to which the court addresses the issue of jurisdiction; 4) failure by the IRS to honor requests for audits, transcripts, and hearing (Compl. at Counts 2 and 5), as to which the court address the issue of jurisdiction; 5) alleged breach of an agreement between the IRS and Renate Pacetti (Compl. at Count 2), as to which the court examines the issue of standing; 6) alleged disclosure of tax information (Compl. at Count 3), as to which the court examines the issues of standing and jurisdiction; 7) alleged wrongful levy (Compl. at Count 3), as to which the court examines the issue of jurisdiction; 8) sale of the Villa Park Property (Compl. at 4), as to which the court examines the issue of jurisdiction; 9) sale of the Orlando Property (Compl. at 1, 4), as to which the court examines the issue of jurisdiction; and 10) alleged civil rights violations (Compl. at Counts 2 and 5).

### 1. Alleged Breaches of Missile Contract and Guaranteed Offset Agreement

#### a. Standing

█ In Count 1, plaintiff claims that he sustained tax penalties and interest as a result of MICOM's breach of both the progress payment provision of the Missile Contract with Triad and the Guaranteed Offset Agreement with plaintiff, Renate Pacetti, and Triad. Compl. at Count 1, ¶ 1. Before addressing plaintiff's allegation, the court addresses, sua sponte, whether plaintiff has standing to raise this claim. Standing presents a threshold issue of justiciability that the court must examine before addressing the substance of plaintiff's claims. *See Juidice v. Vail,* 430 U.S. 327, 331, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (raising standing sua sponte "as a matter of the case-or-controversy requirement associated with Art. III"); *Smith v. United States,* 28 Fed.Cl. 430, 436 (1993) ("As a threshold matter, the court

---

**2.** The court addresses issues of subject matter jurisdiction, standing, collateral estoppel, and statute of limitations as jurisdictional issues under 12(b)(1).

must first address ... whether plaintiff has standing."); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* (Wright & Miller) § 1542 (1990) ("[O]bjections to standing ... cannot be waived and may be raised by a federal court sua sponte."). A party has constitutional standing if he or she alleges an injury in fact that is caused by the challenged conduct and is redressible by the court. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (requiring "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions"); *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (requiring "not only a 'distinct and palpable injury,' to the plaintiff, but also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct" (citations omitted)).

■ To have standing in this court on a contract claim, plaintiff must be in privity of contract with the government. The Tucker Act confers jurisdiction on the Court of Federal Claims over "claim[s] against the United States founded ... upon any express or implied contract with the United States." 28 U.S.C. § 1491 (1994). Only plaintiffs who are in privity of contract with the government can have standing to bring a claim in this court. *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984) ("The government consent to be sued only by those with whom it has privity of contract."); *Kanehl v. United States*, 38 Fed.Cl. 89, 99 (1997) ("In a 'legal' contractual claim, the only party with standing to sue the government is the party with whom the government contracted.");*Cal. Sand and Gravel, Inc. v. United States*, 22 Cl.Ct. 19, 24 (1990) ("Ab-

sent privity, a party lacks standing to sue; without standing, the court is without jurisdiction to resolve issues raised by that party."), *aff'd without op.*, 937 F.2d 624 (Fed.Cir. 1991).

■ In his complaint, plaintiff alleges a number of injuries to not only to himself but also to Renate Pacetti and to Triad. Compl. at Counts 1–5.[3] For an injury to create standing, however, it must be an injury to the party asserting the claim. *See, e.g., Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (requiring a " 'distinct and palpable injury' "); *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (requiring a " 'direct injury' "); *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (requiring an "injury in fact"); *Urban Contractors Alliance of St. Louis v. Bi–State Dev. Agency*, 531 F.2d 877, 881 (8th Cir.1976) ("[U]nder any articulation of the standard it is fundamental that the plaintiff himself must have suffered the injury he seeks to redress."). Generally, a plaintiff does not have standing to assert claims of third parties. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) ("[A plaintiff] has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others."). Although there are many exceptions to the general rule of third party standing, this court has recognized no such exception for officers of a corporation. Corporate officers do not have standing to sue on a corpora-

3. For plaintiff's allegations of injuries to Renate Pacetti and Triad, see Count 1 ("fail[ed] to honor the progress payment provision of contract [with Triad] ... and pay ... for delivered and accepted units"; "withheld Triad receivables"; "failed to honor a tri-party guaranteed offset agreement [to which Triad was party]"; "act[ed] in bad faith by its continued seizure of company assets"; "caused Triad ... additional ... interest and penalties"); Count 2 ("breached an agreement with ... Renate Pacetti"; "violating the civil rights of ... Renate Pacetti, and Triad"); Count 3 ("provided unauthorized persons with the ... Triad tax position"; "filed a false levy against the company"); Count 4 ("violation of guaranteed offset agreement"); and Count 5 ("failure to credit the Triad account"; "failure to grant the company ... an audit"; "violated the civil rights of ... the company").

tion's behalf unless they themselves are personally a party to the contract. *Algonac Mfg. Co. v. United States,* 192 Ct.Cl. 649, 428 F.2d 1241, 1249 (1970). This rule includes officers who conducted contract negotiations on behalf of a corporation, even if the corporation is now defunct. *S.R. Weinstock & Assocs. v. United States,* 223 Ct.Cl. 677, 680 (1980). The court sees no prudential reason in this case for extending third party standing to plaintiff based on his status as Triad's president. Since claims relating solely to Triad do not include injuries in fact to plaintiff, plaintiff does not have standing to raise them.

Even assuming MICOM breached its contract and this breach caused plaintiff's harm, plaintiff does not have standing to raise this claim unless he was in privity of contract with MICOM. *See Erickson Air Crane Co.,* 731 F.2d at 813; *Cal. Sand and Gravel, Inc.,* 22 Cl.Ct. at 24; *Kanehl,* 38 Fed.Cl. at 99. According to the complaint, the Missile Contract, DAAH01–84–C–0974, was a contract between MICOM and Triad. Compl. at Count 1, ¶ 1; *see also* Compl. Exh. 3 at 1 (Guaranteed Offset Agreement, stating that "Triad ... entered into a Contract, No. DAAH01–84–C0974 ... with the Department of Defense"). Because plaintiff was not, as president of Triad, in privity of contract with MICOM, he has no standing to raise claims arising out of any breach of the Missile Contract.

█ Plaintiff also alleges tax liabilities arising from MICOM's breach of its Guaranteed Offset Agreement. Compl. at Count 1, ¶ 2, Count 4. According to plaintiff, this agreement exists "between the IRS, Triad Microsystems Inc. and/or Bartola J. and Renate Pacetti and the Department of Defense (Army Missile Command, MICOM)." *Id.* at Count 1, ¶ 2. The agreement itself states that it is between "the Internal Revenue Service, Triad ..., Bartola J. and Renate Pacetti, ... and the Department of Defense." Compl. Exh. 3. at 1 (emphasis omitted). Since plaintiff is a party to this agreement, he is in privity of contract with the government. According to plaintiff, MICOM's failure to honor the agreement by directing payment to the IRS caused plaintiff

to incur tax penalties and interest. Compl. at Count 1, ¶ 3, Count 4. When afforded the presumption that these allegations are true, plaintiff appears to have suffered an injury in fact caused by defendant's breach of contract. Therefore plaintiff has standing for this claim based on the allegations in his complaint, but only as it relates to his own losses.

#### b. Collateral Estoppel

Plaintiff alleges that MICOM breached the Guaranteed Offset Agreement. Compl. at Count 1, ¶ 2, Count 4. In this agreement, MICOM agreed to make its payment for goods delivered in August 1988 pursuant to the Missile Contract directly to the IRS to offset Triad's outstanding employment tax liens. Compl. Exh. 3 at 2. According to plaintiff, MICOM failed to direct payment to the IRS, causing plaintiff to incur tax liability and continued accrual of penalties and interest. Compl. at Count 4.

The Guaranteed Offset Agreement relies on Triad and MICOM first completing their transactions pursuant to the Missile Contract. This contract was previously before this court in *Daff v. United States,* 31 Fed.Cl. 682 (1994), *aff'd,* 78 F.3d 1566 (Fed.Cir.1996). In *Daff,* the court sustained default termination of the contract because of Triad's fraudulent conduct. *Id.* Plaintiff attempts to resurrect claims based on the Missile Contract in Count 1, but even if he had standing to raise them, these claims would be barred by collateral estoppel.

█ Collateral estoppel bars parties from relitigating issues that were actually and necessarily determined by a court of competent jurisdiction in a prior suit. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Rule 8(c) lists "estoppel" as one of the affirmative defenses a party must set forth in a pleading. RCFC 8(c). The Supreme Court has considered "estoppel" in the equivalent Rule 8(c) in the Federal Rules of Civil Procedure to include collateral estoppel. *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Generally an affirmative defense is waived if not raised in the plead-

ings. One of the principles underlying the collateral estoppel and res judicata doctrines, though, is judicial economy. The Court of Claims has stated that "the fact that a party can waive the application of collateral estoppel suggests that the needs of judicial administration are, at best, of subsidiary value." *Technograph Printed Circuits, Ltd. v. United States,* 178 Ct.Cl. 543, 372 F.2d 969, 977 (1967). However, the overriding question is not waiver, but "whether the new litigation is truly needless or redundant." *Id.* Thus this court has recognized that "[i]t is . . . within the court's prerogative to raise the doctrine of collateral estoppel *sua sponte.*" *Exxon Corp. v. United States,* 40 Fed.Cl. 73, 87 n. 21 (1998). Other courts have recognized a court's ability to raise this issue sua sponte as well. *See, e.g., Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir.1980) ("Dismissal by the court sua sponte on res judicata grounds . . . is permissible in the interest of judicial economy where both actions were brought before the same court."); *Evarts v. Western Metal Finishing Co.,* 253 F.2d 637, 639 n. 1 (9th Cir.1958) ("[A] district court, acting sua sponte, may dismiss an action where the records of that court show that a previous action covering the same subject matter and parties had been dismissed."). If the issues plaintiff raises regarding the Missile Contract have been sufficiently determined in *Daff,* it would be needless and redundant for the court to reexamine them. Therefore the court considers the issue of collateral estoppel in this case.

■■■■ Collateral estoppel applies to final judgments of prior lawsuits between the same parties or their privies. *S. Pac. R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897); *Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d 1360, 1365–66 (Fed. Cir.2000). Because privity is a question of fact, there is no universal definition or test for "privity." *Martin v. United States,* 30 Fed.Cl. 542, 550 (1994) (citing *Lowell Staats Mining Co. v. Philadelphia Elec. Co.,* 878 F.2d 1271, 1276 (10th Cir.1989)). Generally officers, directors, and shareholders are not privies of a corporation, and so judgment against one is not binding on the other. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper § 4460. The question of

privity, however, is a matter of substance, not form. *Chicago, R.I. & P. Ry. Co. v. Schendel,* 270 U.S. 611, 618, 46 S.Ct. 420, 70 L.Ed. 757 (1926). Courts have frequently found privity to exist between a corporation and its controlling owner, particularly where the controlling owner has participated extensively in the litigation. *See Drier v. Tarpon Oil Co.,* 522 F.2d 199, 200 (5th Cir.1975) (finding privity between a corporation and its president where the president was also a major stockholder and controlled the earlier law suit); *Sparks Nugget, Inc. v. Comm'r of Internal Revenue,* 458 F.2d 631, 638–39 (9th Cir.1972) (finding privity between a closely held corporation and its sole or controlling stockholder); *Nichols v. Alker,* 126 F.Supp. 679, 682–83 (E.D.N.Y.1954) (finding privity between corporation and its directors, officers, and agents in fraud suit where the fraud occurred during their employment with the corporation), *aff'd,* 231 F.2d 68 (2d Cir. 1956). Some courts have gone so far as to presume privity between a close corporation and its controlling stockholder, on the assumption that in litigation involving the corporation, the stockholder's interest is sufficiently common to that of the corporation. *Sparks Nugget,* 458 F.2d at 639; *Warnecke v. Laclede Gas Co.,* 455 F.Supp. 444, 445–46 (D.Mo.1978), *aff'd,* 604 F.2d 561 (8th Cir. 1979). The presumption of privity is particularly strong in cases involving fraud, where courts have held that a suit for fraud against a corporation will bar a subsequent fraud suit against the corporation's officers, directors, or agents. *Lowell Staats Mining Co.,* 878 F.2d at 1276 ("Litigation involving alleged fraudulent conveyances by a corporation would be res judicata in favor of such persons who conducted its affairs and determined its policies, if the plaintiff failed in an action against the corporation to prove the existence of the fraudulent conveyances."); *Nichols,* 126 F.Supp. at 682 ("Litigation involving alleged fraud and conspiracy by a corporation would be res judicata in favor of such persons who conducted its affairs and determined its policies if the plaintiff failed in an action against the corporation to prove the existence of the fraud of conspiracy.").

Here, plaintiff asserts that defendant breached the Missile Contract—the same contract that the court in *Daff* determined had been breached by Triad because of Triad's fraudulent conduct. Compl. at Count 1, ¶ 1; *Daff*, 31 Fed.Cl. at 694–97. Although Triad, not plaintiff, was a party in *Daff*,[4] plaintiff is the president and sole owner of Triad. Response to the Court Order for Supplemental Briefing (Pl.'s 4/9/01 Supp. Brief) at 2. Plaintiff also appeared as a witness in *Daff*. 31 Fed.Cl. at 691. Plaintiff asserts that he was "not in control of Triad from June 1987 to September 1988," but offers no evidence to support this assertion. *Id.* at 1. Rather, certain facts—namely, plaintiff's hiring of a consultant in July 1987 (*Daff*, 31 Fed.Cl. at 687) and signing the Guaranteed Offset Agreement, both as a party and on behalf of Triad, in April 1988 (Compl.Exh. 3)—suggest that plaintiff maintained a significant degree of control over the corporation during this period. Since plaintiff was in a position of control, both as president and as sole shareholder, at the time of both the litigation and the fraudulent behavior implicated in *Daff*, plaintiff was a privy of Triad in that suit.

In addition to applying to parties or their privies, collateral estoppel will apply only when: "(1) the issues are identical to those in a prior proceeding, (2) the issues were actually litigated, (3) the determination of the issues was necessary to the resulting judgment, and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." *Jet*, 223 F.3d at 1365–66. Here, plaintiff asserts that defendant "fail[ed] to honor the progress payment provision of [the Missile Contract]." Compl. at Count 1, ¶ 1. The same issue of defendant's obligations under the Missile Contract was litigated in *Daff* where the court affirmed the contracting officer's termination of the contract on May 9, 1988, several months before the August 1988 progress payment at issue in the Guaranteed Offset Agreement. *Daff*, 31 Fed.Cl. at 687. Determination of the contract's validity and the parties' contractual duties was necessary to the judgment in *Daff*. And as privy of Triad,

plaintiff had a full and fair opportunity to litigate the issue. Therefore, collateral estoppel applies and plaintiff is barred from reasserting a claim against defendant for breach of the Missile Contract.

c. Failure to State a Claim

Rule 12(b)(4) requires plaintiffs to state a claim upon which relief can be granted. Dismissal for failure to state a claim is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In determining whether plaintiff has a stated a claim, the court should assume the undisputed facts in plaintiff's complaint to be true. *Miree*, 433 U.S. at 27 n. 2, 97 S.Ct. 2490; *Reynolds*, 846 F.2d at 747; *La Mirage, Inc.*, 44 Fed.Cl. at 196. Plaintiff's pleadings deserve particular latitude since plaintiff appears before the court pro se. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"); *Roche v. United States Postal Serv.*, 828 F.2d 1555, 1558 (Fed.Cir.1987) ("Pro se petitioners are not expected to frame issues with the precision of a common law pleading.").

Here, plaintiff claims that defendant breached the Missile Contract and thus failed to honor the Guaranteed Offset Agreement. Compl. at Count 1, ¶¶ 1–2. As the court in *Daff* established, Triad, not defendant, breached the Missile Contract. 31 Fed.Cl. at 695. Collateral estoppel bars plaintiff from challenging this holding. The Guaranteed Offset Agreement specifies that "[i]f either party breaches this Agreement, the Agreement shall become null and void." Compl. Exh. 3, at ¶ 4. The essence of the Guaranteed Offset Agreement is that defendant shall make its payment for goods delivered in August 1988, pursuant to the Missile Contract, to the IRS rather than plaintiff. *Id.* at 1–3. The court in *Daff*, however, established that the Missile Contract was breached by Triad's fraud and thus terminated as of May 9, 1988. 31 Fed.Cl. at 686, 697. By breach-

4. Charles W. Daff represented Triad as a trustee in bankruptcy.

ing the Missile Contract, Triad also breached the Guaranteed Offset Agreement, thereby invalidating the Agreement and releasing defendant from its obligation to deliver any payments to the IRS. Since the Guaranteed Offset Agreement was null and void because of Triad's breach, defendant's subsequent behavior cannot constitute a breach of the Guaranteed Offset Agreement. Plaintiff therefore has no basis to claim that defendant breached the Guaranteed Offset Agreement, as he alleges in Counts 1 and 4.

By voiding the Guaranteed Offset Agreement by virtue of breaching the Missile Contract, plaintiff also voided all rights arising from the Guaranteed Offset Agreement. This includes plaintiff's claims for an audit or transcript arising from defendant's alleged breach of the Guaranteed Offset Agreement, discussed above. *See* Compl. at Count 2, ¶ 2, Count 5. Since the Guaranteed Offset Agreement is void, plaintiff has failed to state a claim regarding his allegations that defendant breached the agreement.

### d. Statute of Limitations

 Even if Triad's breach of the Guaranteed Offset Agreement did not preclude any possible breach by defendant, plaintiff's claims for breach of contract would be barred by the statute of limitations. The United States Code specifies that "[e]xcept as provided by the Contract Disputes Act of 1978 [5], every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401 (1994). Plaintiff's right of action for a breach of the Guaranteed Offset Agreement would have first accrued at the time defendant allegedly breached the agreement—namely when it failed to deliver payment to the IRS in August 1988. Plaintiff filed his complaint on May 22, 2000, well beyond the six year period. Therefore any claims for breach of the Guaranteed Offset Agreement are barred by the statute of limitations.

**5.** The Contract Disputes Act applies to executive contracts for "(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance

### 2. Requests for Refund and Abatement

 Plaintiff seeks refunds for tax years 1987, 1988, 1994, and 1995, and for refunds filed in 1991, 1993, 1996, 1997, 1998, and 2000. Compl. at 4–5 and Count 2, ¶ 2. The I.R.C. specifies that "[n]o suit or proceeding shall be maintained in any court ... until a claim for refund or credit has been duly filed with the [IRS]." I.R.C. § 7422(a). Filing a claim with the IRS is thus a jurisdictional prerequisite to filing a suit for refund in this court. *See Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1371 (2000) (dismissing claims not previously filed with the IRS for lack of jurisdiction); *Shanker v. United States*, 571 F.2d 8, 10 (8th Cir.1978) ("Section 7422(a) makes the filing of a claim a jurisdictional prerequisite to a suit for refund in federal court."). Once a taxpayer has filed a claim for refund with the IRS, "[n]o suit ... shall be begun before the expiration of 6 months from the date of filing the claim required under [§ 7422(a) ] ... nor after the expiration of 2 years from the date of mailing ... a notice of disallowance." I.R.C. § 6532(a)(1). For each of plaintiff's claims for refund, if plaintiff has not first filed a claim with the IRS, or has filed suit less than six months after filing a claim or more than 2 years after the IRS mailed a notice of disallowance, this court will not have jurisdiction over that refund claim. *See, e.g., Lyashenko v. United States*, 41 Fed.Cl. 626, 629–30 (1998) (treating § 6532(a) statute of limitations as a subject matter jurisdiction issue); *Weiner v. United States*, 15 Cl.Ct. 43, 46 (1988) (same).

### a. 1987

In his complaint, plaintiff seeks a return of $3180 for tax year 1987. Compl. at 4. This claim appears to arise from the allegation in Count 1 that MICOM caused plaintiff not to pay Triad's employment taxes, resulting in § 6672 penalties against plaintiff. Compl. at Count 1. Plaintiff previously filed a claim for refund and abatement of these penalties for

or real property; or, (4) the disposal of personal property." 41 U.S.C. § 602 (1994). The Guaranteed Offset Agreement falls into none of these categories. Accordingly, the Contract Disputes Act does not apply.

tax periods ending December 31, 1986, June 30, 1987, September 30, 1987, and December 31, 1987. Def.'s MTD Exh. A. The IRS disallowed plaintiff's claims, mailing its notice of disallowance on February 14, 1997. *Id.* The I.R.C. permits suits for refund, but only after the taxpayer has filed a claim for refund or credit with the IRS. I.R.C. § 7422(a). Since the IRS has rendered a decision on the refund claim, the taxpayer must file any civil suit within two years of the date the IRS mailed its notice of disallowance. I.R.C. § 6532(a). Plaintiff's period for filing suit regarding his § 6672 penalties expired on February 14, 1999, two years following his notice of disallowance for refund, and more than a year before plaintiff filed his complaint in this court. *See* Def.'s MTD Exh. A. Therefore this court does not have jurisdiction over plaintiff's claim for 1987.

Plaintiff argues that the court may relieve him from the statute of limitations because he has subsequently discovered new evidence not previously available. Objection to Motion to Dismiss Plaintiff's Complaint and Exhibits and Memorandum in Support Thereof (Pl.'s Obj.) at 6. However, § 6532 contains no exceptions for discovery of new evidence. I.R.C. § 6532. Moreover, the Federal Circuit has held that § 6532 includes no implied equitable statute of limitations exceptions. *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1462 (Fed.Cir.1998) (finding nothing in the language of § 6532 to suggest an implied equitable exception). Therefore plaintiff's allegation of new evidence provides no basis for the court to make an exception to the statute of limitations.

Plaintiff also contends that the statute of limitations is void in this case because it involves fraud. Pl.'s Obj. at 6. Plaintiff, however, fails to specify what acts of fraud are involved or how they affect the statute of limitations in this case. *See* RCFC 9(b) (stating that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity."). Therefore plaintiff's allegations of fraud do not support a statute of limitations exception. Since the statute of limitations has expired on plaintiff's claims for the tax periods ending December 31, 1986, June 30, 1987, Sep-

tember 30, 1987, and December 31, 1987, the court lacks jurisdiction over plaintiff's claims for those periods.

b. 1988

Plaintiff seeks a refund of $117 for tax year 1988. Compl. at 4. According to defendant, plaintiff has failed to establish that he filed a refund claim for the second quarter of 1988, as required before filing a suit for refund. Def.'s MTD at 7; *see* I.R.C. § 7422(a). In his objection to defendant's motion to dismiss, plaintiff included a Form 843 refund claim dated April 7, 2000, and received May 2, 2000. Pl.'s Obj. Exh. B. This claim is for the tax period from January 1987 through 1988. *Id.* As discussed above, the IRS denied plaintiff's refund claims for the second, third, and fourth quarters of 1987 on February 14, 1997. Def.'s MTD Exh. A. Filing a second claim for these tax periods, as plaintiff appears to do with his Form 843 claim in exhibit B, does not alter the statute of limitations for those claims. *See Jones v. United States*, 26 Cl.Ct. 424, 425 (1992) (holding that taxpayer's filing of a second set of claims, after the first set had been disallowed, had no effect on the running of the statute of limitations); I.R.C. § 6532(a)(4) ("Any consideration, reconsideration, or action by the Secretary with respect to such claim following the mailing of a notice ... of disallowance shall not operate to extend the period within which suit may be begun."). Therefore, the statute of limitations as to plaintiff's claims for 1987 remain expired.

Plaintiff's refund claim in exhibit B, however, also includes tax year 1988, for which plaintiff has not, to the court's knowledge, previously filed a refund claim. *See* Pl.'s Obj. Exh. B. If the claim in exhibit B is plaintiff's first refund claim for tax year 1988, though, the statutory period for filing suit had not commenced at the time plaintiff filed suit. A taxpayer may not file a suit for refund "before the expiration of 6 months from the date of filing the claim." I.R.C. § 6532(a). Plaintiff signed his claim on April 7, 2000 and the IRS received it on May 2, 2000. Plaintiff then filed this suit on May 22, 2000, well before the end of the six month period. This court does not have jurisdiction

over a suit filed prematurely in violation of the § 6532(a)(1) six month waiting period. *Stelco Holding Co. v. United States,* 42 Fed. Cl. 101, 115 (1998). Therefore, the court does not have jurisdiction over plaintiff's suit for tax year 1988. The court dismisses this claim without prejudice.

c. 1994

■ Plaintiff seeks a refund of $1000.64 for tax year 1994. Compl. at 4–5. For plaintiff to file suit in this court, he must first have filed a claim for refund with the IRS. I.R.C. § 7422(a). Despite the court's requests, plaintiff has not produced a 1994 claim for refund in that amount. *See* Court's Order of May 10, 2001; Response to the Court Order for Supplemental Briefing (Pl.'s 5/21/01 Supp. Brief) at 4. The only document before the court listing $1000.64 is a Certificate of Assessments, Payments, and Other Specified Matters that shows an overpaid credit of $1000.64 applied to plaintiff's tax liability on April 15, 1995. Def.'s MTD Exh. B. When a taxpayer has overpaid taxes, the IRS "may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." I.R.C. § 6402(a).[6] It appears from Exhibit B to defendant's Motion to Dismiss that plaintiff filed a refund in 1995 that was allowed, but that the amount allowed for refund was then credited to his tax liability pursuant to I.R.C. § 6402 rather than issued to plaintiff as a refund. Plaintiff's claim for $1000.64, therefore, appears not to be a claim for refund but a challenge to the § 6402 application of credit. To challenge a § 6402 crediting of overpayment, plaintiff must file a claim for refund challenging the overpayment before filing suit in court. *Shanker,* 571 F.2d at 10; Jacob Mertens, Jr., *The Law of Federal Income Taxation* § 58A:75 (1999). Since plaintiff has not shown that he filed a claim for refund challenging the overpayment, the court does not have jurisdiction to hear plaintiff's claim for 1994. The court dismisses this claim without prejudice.

d. 1995

Plaintiff seeks a refund of $298 for tax year 1995. Compl. at 5. Plaintiff filed a refund claim with the IRS for this period on December 7, 1996. Pl.'s 5/21/01 Supp. Brief Exh. 1(c). The IRS included its disallowance of this claim in its February 14, 1997 notice of disallowance, discussed above. Def.'s MTD Exh. A. Plaintiff's period for filing suit for refund for 1995 expired on February 14, 1999, two years after the IRS mailed its notice of disallowance. *See* I.R.C. § 6532(a). This court therefore lacks jurisdiction to hear plaintiff's refund claim for 1995.

e. 1991, 1993, 1996, 1997, 1998, 2000

Plaintiff alleges that defendant "ignored the requests made for abatement and refund filed in 1991, 1993, 1996, 1997, 1998, and 2000." Compl. at Count 2, ¶ 2. When asked by the court to provide documentation of any requests for abatement or refund or notices of disallowance for these years, plaintiff produced: 1) a claim filed by Triad on October 13, 1999; 2) a claim filed by Renate Pacetti on July 23, 1997; 3) a claim for tax year 1987 in the amount of $350,000 filed by plaintiff on April 7, 2000; and 4) and a claim for tax year 1998 in the amount of $151,896 filed by plaintiff on December 11, 2000. *See* Court's Order of May 10, 2001; Pl.'s 5/21/01 Supp. Brief at 3 and Exh. 2. As discussed above, plaintiff does not have standing to raise the claims of Triad or Renate Pacetti. Thus, only the latter two refund claims could give rise to suit for plaintiff. Plaintiff may not, however, file a suit for refund until six months after filing a corresponding claim with the IRS. *See* I.R.C. § 6532(a)(1). Plaintiff filed his suit with this court on May 22, 2000, less than two months *after* filing his claim for $350,000 for tax year 1987 on April 7, 2000, and seven months *before* filing his claim for $151,896 for tax year 1998 on December 11, 2000. Because neither of these claims was ripe for review at the time plaintiff filed suit with this court, the court does not have jurisdiction to hear them. The court dismisses these claims without prejudice.

---

6. This subsection of the I.R.C. has been amended, but the amendment applies only to refunds payable after December 31, 1999. *See* Pub.L. No. 105–206.

Despite the court's requests, plaintiff has not provided documentation of claims filed in 1991, 1993, 1996, or 1998 or any notices of disallowance of those claims. *See* Pl.'s 5/21/01 Supp. Brief. Since plaintiff must file a claim with the IRS before filing suit with the court, the court does not have jurisdiction over plaintiff's claims for refunds filed in 1991, 1993, 1996, or 1998. The court dismisses claims for these years without prejudice.

### 3. Failure to Provide Administrative Hearing

 Since all federal courts are courts of limited jurisdiction, a court must examine its jurisdiction over a claim before determining the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). This court's jurisdiction is governed by the Tucker Act, which states, in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act creates jurisdiction over claims, but when the claim is not based on breach of contract, the substantive basis for a cause of action must derive from a money mandating provision. *Tippett v. United States*, 185 F.3d 1250, 1254–55 (Fed.Cir.1999); *Calhoun v. United States*, 32 Fed.Cl. 400, 405 (1994), *aff'd*, 61 F.3d 918 (Fed.Cir.1995).

In Count 2, plaintiff claims injury from the IRS's refusal of plaintiff's requests for a hearing under I.R.C. § 6320 regarding seizure of sale proceeds from the Villa Park property. Compl. at Count 2, ¶ 2. Section 6320 provides for a hearing upon request regarding a notice of lien against a property. I.R.C. § 6320(b). This court, however, lacks jurisdiction to hear a § 6320 claim. In addition to the Tucker Act, this court's jurisdic-

tion must derive from an independent source of law that mandates monetary compensation. *Calhoun v. United States*, 32 Fed.Cl. at 405. Section 6320 includes no provision for damages that could provide jurisdiction in this court for a claim of failure to conduct a § 6320 hearing. Therefore, this court lacks jurisdiction over plaintiff's § 6320 claim.

Moreover, § 6320 only "appl[ies] to collection action initiated ... 180 days after [July 22, 1998]." Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105–206, 112 Stat. 750 (codified as 26 U.S.C. § 6320). Plaintiff states in his complaint that the IRS seized his community property proceeds in 1991. Compl. at 1. Since the alleged seizure occurred long before the effective date of § 6320, plaintiff has no grounds for a § 6320 claim in this or any court.

### 4. Requests for Audits, Transcripts, and Hearings

 In Count 5, plaintiff alleges that Triad's and/or his tax liability was substantially overpaid because the IRS failed to properly credit the Triad account or grant plaintiff an audit of Triad's account. Compl. at Count 5. Again, plaintiff lacks standing to raise any of Triad's injuries. To the extent the IRS's action caused injury to plaintiff's own tax liability, though, plaintiff could have standing.

In Counts 2 and 5, plaintiff alleges that defendant has failed to "conduct an audit of the account ... produce an accurate transcript of the account ... make the proper credits to the account," "grant ... Pacetti with an audit for the account or ... grant a hearing regarding the correct status of the account." Compl. at Count 2, ¶ 2, Count 5. The court is not aware of, nor has plaintiff suggested any, provisions in the I.R.C., other than § 6320, that would provide a statutory basis for demanding hearings, audits, or transcripts. Without a statutory basis, the court has no jurisdiction to consider these claims.

According to plaintiff, his claims for audits and transcripts derive from a breach of the Guaranteed Offset Agreement. Pl.'s 4/9/01

Supp. Brief at 5. The Guaranteed Offset Agreement provides, in relevant part:

On or before September 15, 1988, and before the Department of Defense pays to Triad any portion of the September Payment, the Triad shall contact the Internal Revenue Service Revenue Officer to whom the Triad employment tax account has been assigned and request that the Revenue Officer inform Triad and the Department of Defense in writing of the amount due on Triad's Liens as of September 1988. The Revenue Officer will so inform the Department of Defense and Triad in writing of the amount due.

Compl. Exh. 3 at ¶ 1 (emphasis omitted). This portion of the Agreement creates a contractual duty for the IRS to provide, if certain conditions are met, a written assessment of Triad's debts. Pursuant to the Tucker Act, the court has jurisdiction over breach of government contract claims. 28 U.S.C. § 1491. The court has determined, however, that plaintiff's breach of the Missile Contract effectively invalidated the Guaranteed Offset Agreement. Therefore plaintiff has no rights arising from the Guaranteed Offset Agreement, including plaintiff's claims regarding defendant's alleged refusal to provide an audit or transcript of plaintiff's tax account.

### 5. Breach of IRS Agreement with Renate Pacetti

▉ Plaintiff alleges injuries arising from the breach of an IRS agreement with Renate Pacetti to allow her to reinvest the sale proceeds from the Pacettis' former marital home in Villa Park, California. Compl. at Count 2, ¶ 2. Although plaintiff claims a-one half interest in these sale proceeds under California marital property law, Cal. Fam.Code §§ 2550, 2581 (1994), plaintiff was not a party to the IRS agreement. See Pl.'s 5/21/01 Supp. Brief Exh. 5 (Agreement between Renate Pacetti and the IRS). Since plaintiff was not in privity of contract, plaintiff lacks standing to raise claims for injuries arising solely from this agreement between the IRS and Renate Pacetti.

### 6. Disclosure of Tax Information

Plaintiff alleges that the IRS disclosed plaintiff's tax information to unauthorized persons which caused the IRS to block Triad's receipt of funds due under an ASBCA judgment, file a false levy against Triad, and seize company receivables. Compl. at Count 3. Excepting the alleged disclosure of plaintiff's tax information, the injuries in Count 3, as alleged in the Complaint—false levy, failure to release appropriate funds to the company, and unauthorized seizure of company receivables—constitute injuries to Triad. Plaintiff alleges no personal injuries resulting from the levy or Triad's other injuries. Therefore plaintiff lacks standing to these claims on behalf of Triad.

▉ Plaintiff also alleges that the IRS disclosed his personal tax information to unauthorized persons in violation of the Taxpayer Bill of Rights. Compl. at Count 3. Section 6103(a) of the I.R.C. prohibits unauthorized disclosure of a taxpayer's return information. I.R.C. § 6103(a). When a taxpayer suffers a "violation of any provision of section 6103, such taxpayer may bring civil action for damages against the United States in a district court of the United States." I.R.C. § 7431(a)(1). Since the I.R.C. places jurisdiction solely in the district courts, however, this court does not have jurisdiction to remedy plaintiff's § 6103 claim.

### 7. Wrongful Levy

▉ Plaintiff asserts that the IRS filed a false levy against Triad. Compl. at Count 3. To the extent plaintiff might have standing to raise this claim, the court lacks jurisdiction to hear it. In the event of a wrongful levy, a person "may bring a civil action against the United States in a district court of the United States." I.R.C. § 7426(a)(1). Since the I.R.C. vests jurisdiction for wrongful levies in the district courts, this court does not have jurisdiction over plaintiff's claim.

### 8. Sale of Villa Park Property

▉ Plaintiff asserts that he is entitled to a return of $203,707.86 as a one half community property interest in the sale proceeds from his former marital home, the Villa Park

Property. Compl. at 4. The court has determined that to the extent this claim arises from the alleged breach of an agreement between the IRS and Renate Pacetti, plaintiff lacks standing to raise the claim. To the extent this claim may arise outside the IRS/Renate Pacetti agreement, however, plaintiff should have standing to enforce his community property rights.

The issue is not whether plaintiff has standing to enforce his community property rights, but whether this court has the power to hear a claim to those rights. The sale proceeds from the Villa Park property were used, through Renate Pacetti's bankruptcy proceedings, to satisfy her debt to the IRS. *See* Defendant's Supplemental Brief in Response to Order of May 10, 2001 (Def.'s 5/21/01 Supp. Brief) Exh. H (Motion by trustee Charles Daff to settle disputes between Renate Pacetti's estate and the IRS), Exh. I (order of the Bankruptcy Court authorizing trustee to settle dispute). This debt arose from the § 6672 penalty for Triad's failure to pay employment taxes. *Id.* Exh. H, 3.[7] Plaintiff asserts that he and Renate Pacetti owned the Villa Park Property as community property. *See* Compl. at Count 2, ¶ 1. It is not clear from the complaint when plaintiff and Renate Pacetti dissolved their marriage, but the November 21, 1990 agreement between Renate Pacetti and the IRS refers to plaintiff as Renate Pacetti's "ex-husband." Pl.'s 5/21/01 Supp. Brief Exh. 5 at 1. Under California marital property law, plaintiff and his ex-wife would thus each own a one half interest in all community property, presumably including the Villa Park Property. Cal. Fam.Code §§ 2550, 2581. If plaintiff is asserting that the bankruptcy court erred by allowing his community property share of the proceeds from the Villa Park Property to be applied to Renate Pacetti's debt, then his recourse is to challenge that court's decision, not to file suit against the IRS in this court. If, on the other hand, plaintiff's claim regarding the Villa Park Property arises from a dispute over the distribution of community property or plaintiff's ownership interest in the Villa Park Property, that dispute is with plaintiff's ex-wife, not the IRS. In either case, plaintiff's claim would not constitute a "claim against the United States" as is necessary for this court to have jurisdiction over the claim.

9. Sale of Orlando Property

Plaintiff alleges that the IRS seized and sold the Orlando Property, an office building owned by plaintiff, in 1991. Compl. at 1. Plaintiff seeks the return of $206,901.54 from the sale of this property. *Id.* at 4. Defendant has no record that the IRS seized the Orlando Property, but suggests that the property may have been sold as part of Triad's bankruptcy proceedings. Def.'s 5/21/01 Supp. Brief at 11–12. When asked to provide information regarding the seizure of the Orlando Property, plaintiff provided a Disclosure Statement filed on behalf of Triad in the bankruptcy court, also suggesting that plaintiff's claim relates to Triad's bankruptcy proceedings. Pl.'s 5/21/01 Supp. Brief Exh. 8. The Disclosure Statement states that in June 1987, Triad conveyed the Orlando Property to "the Pacetti's" for less than the value of the property. *Id.* As part of Triad's bankruptcy proceedings, plaintiff and Renate Pacetti later reconveyed the Orlando Property to Triad in 1989. *Id.* This evidence further suggests that Triad was the property owner at the time of the alleged 1991 seizure, and that the property was sold as party of Triad's bankruptcy proceedings. If this is the case, plaintiff's claim regarding the Orlando Property may be a third party suit for wrongful levy, pursuant to § 7426. I.R.C. § 7426(a). A third party may bring a wrongful levy suit, but only in "a district court of the United States." I.R.C. § 7426(a)(1). Thus, if this is a wrongful levy suit, this court lacks jurisdiction to hear it.

If, however, plaintiff did own the Orlando Property at the time of its alleged seizure,

---

**7.** Even though the § 6672 penalty appears to have been assessed against plaintiff as the officer responsible for filing the employment taxes for Triad, plaintiff and Renate Pacetti appear to have been married at the time of the penalty. Under California marital property law, "debts incurred by either spouse after the date of marriage but before the date of separation shall be divided [the same as community property]." Cal. Fam.Code § 2622 (1994). It thus appears that Renate Pacetti's bankruptcy proceedings addressed her share of the § 6672 debt.

plaintiff's claim would appear to be either a challenge to the tax the property was allegedly seized to satisfy or a challenge to the seizure itself. Section 7422 specifies that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the [IRS]." I.R.C. § 7422(a). To counter a jurisdictional challenge, plaintiff would need to allege and show that he filed a refund claim with the IRS regarding the seizure of the Orlando Property. Plaintiff has neither made this allegation, nor provided a refund claim for the Orlando Property proceeds. Without a claim filed with the IRS, this court lacks jurisdiction to hear a claim for erroneous collection through alleged seizure of the Orlando Property. Therefore, regardless of whether Triad or plaintiff owned the Orlando Property at the time of the alleged seizure, plaintiff has demonstrated no circumstances that would confer jurisdiction on this court to hear plaintiff's claim regarding the Orlando Property.

10. Civil Rights Claims

In Counts 2 and 5, plaintiff alleges that the IRS violated the civil rights of himself, Renate Pacetti, and Triad. Compl. at Count 2, ¶¶ 1–2, Count 5. It is well established that this court does not have jurisdiction over civil rights claims. *Osborn v. United States,* 47 Fed.Cl. 224, 232 (2000); *Bunch v. United States,* 33 Fed.Cl. 337, 341 (1995). Congress has specifically granted jurisdiction for civil rights claims to the district courts. 28 U.S.C. § 1343(a)(4) (1994). Therefore, this court does not have jurisdiction to decide plaintiff's civil rights claims.

III. Conclusion

For the foregoing reasons, the court GRANTS defendant's motion to dismiss. The court dismisses plaintiff's claims for refund for tax years 1988 and 1994 and for requests for abatement filed in 1991, 1993, 1996, 1998, and 2000 without prejudice. All other claims are dismissed with prejudice. The Clerk of the Court shall enter judgment for defendant. Each party shall bear its own costs.

IT IS SO ORDERED.