Lawrence v. UMLIC-Five Corp., 2007 NCBC 30

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                          SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG                        06 CVS 20643

KIRK ALLEN LAWRENCE and
SANDRA LAWRENCE,

              Plaintiffs,

       v.

UMLIC-FIVE CORP.; UNITED
MORTGAGE & LOAN INVESTMENT,
LLC; ARTHUR E. KECHIJIAN; LARRY
E. AUSTIN; UMLIC-SEVEN CORP.;                  **ORDER**
UMLIC CONSOLIDATED, INC.;
UNITED MORTGAGE C.B., LLC;
UMLIC VP, LLC; UNITED MORTGAGE
HOLDINGS, LLC; UMLIC HOLDINGS,
LLC; KECHIJIAN INVESTMENTS,
L.P.; AUSTIN INVESTMENTS, L.P.;
AEK LLC; LEA LLC; and
SUMMATYME LLC,

              Defendants.

       *Poyner & Spruill, LLP by Joshua B. Durham and Michelle C. Hunt for
       Plaintiffs Kirk Allen Lawrence and Sandra Lawrence.*

       *Katten Muchin Rosenman, LLP by Richard L. Farley and Jeffrey C. Grady
       for Defendants United Mortgage & Loan Investment, LLC, Arthur E.
       Kechijian, and Larry E. Austin.*

Diaz, Judge.

# I.

## STATEMENT OF THE CASE

{1}    On 2 May 2006, Plaintiffs obtained a $3.8 million judgment against Defendant UMLIC-Five Corp. ("UMLIC-Five") in the District Court for Travis County, Texas (hereinafter the "Texas Judgment"). (Am. Compl. ¶¶ 22, 30, Ex. A.) The claims in that case[1] arose from UMLIC-Five's wrongful attempt to foreclose upon Plaintiffs' home. (Am. Compl. ¶ 19.)

{2}    UMLIC-Five contested Plaintiffs' claims in Texas for eleven years. While the Texas Litigation was pending, UMLIC-Five filed Articles of Dissolution with the North Carolina Secretary of State. According to Plaintiffs, UMLIC-Five never informed them of its dissolution, even as it continued to defend against the claims in the Texas Litigation for the next four years. (Am. Compl. ¶¶ 24–25.)

{3}    On or about 10 March 2006, UMLIC-Five abandoned its defense of the Texas Litigation. Two months later, Plaintiffs obtained the Texas Judgment. (Am. Compl. ¶¶ 28–30.)

{4}    Plaintiffs allege in this Court that Defendants have wrongfully impeded their efforts to collect on the Texas Judgment. They assert claims for (1) breach of fiduciary duty, (2) fraudulent transfers of UMLIC-Five's assets, and (3) violations of the requirements of Chapter 55 of the North Carolina General Statutes by failing to give Plaintiffs timely notice of UMLIC-Five's dissolution. Plaintiffs also seek to pierce the corporate veil to reach Defendants' personal assets to satisfy the Texas Judgment.

{5}    Before the Court are (1) the Motion of Defendants United Mortgage & Loan Investment, LLC, Arthur E. Kechijian, and Larry E. Austin (collectively "the Moving Defendants") to Compel Discovery, and (2) Plaintiffs' Motion for a Protective Order.

---

[1] Hereinafter referred to as the "Texas Litigation."

## II.

## CONTENTIONS OF THE PARTIES

{6} The Moving Defendants have served Plaintiffs with two sets of interrogatories and requests for production of documents (the "Discovery Requests"). The Moving Defendants have also noticed Plaintiffs' depositions, where they intend to ask questions related to the Discovery Requests.

{7} Stated broadly, the Discovery Requests seek information as to what the Moving Defendants allege is a substantial disparity between the evidence supporting Plaintiffs' actual damages in the Texas Litigation and the amount of the Texas Judgment.

{8} Plaintiffs object to the Discovery Requests on several grounds. First, Plaintiffs argue the requested information is either privileged or protected from disclosure by the work-product doctrine. Second, Plaintiffs contend the requests are neither relevant nor likely to lead to admissible evidence as to their substantive claims in this action. As part of this argument, Plaintiffs contend the Moving Defendants are not entitled to take discovery on the merits of the Texas Judgment because that question has already been settled in a Texas court, and Defendants are barred from attempting to revisit it here.

{9} The Moving Defendants respond that they were not parties to the Texas Litigation, and thus should not be barred from taking discovery as to that litigation in this case.

{10} More to the point, the Moving Defendants smell a rat. They believe that Plaintiffs inflated their damage claim in the Texas Litigation once UMLIC-Five abandoned its defense. Because Plaintiffs seek to invoke this Court's equitable power to pierce the corporate veil against all of the Defendants, the Moving Defendants say it is only proper that they be allowed to discover the facts (if any) supporting the $3.8 million Texas Judgment.

{11} The issue is whether the Discovery Requests are proper under Rule 26 of the North Carolina Rules of Civil Procedure.

## III.

## SUMMARY OF DECISION

{12}    Much of what Defendants seek in the Discovery Requests appears to be immune from discovery, either because it is privileged or is opinion work product. In any event, the Discovery Requests are not relevant to the claims before the Court, nor are they likely to lead to the discovery of admissible evidence. Accordingly, the Court **DENIES** the Moving Defendants' Motion to Compel and **GRANTS** Plaintiffs' Motion for a Protective Order.

## IV.

## PROCEDURAL HISTORY

{13}    Plaintiffs Kirk Allen Lawrence and Sandra Lawrence filed their Complaint on 20 October 2006.

{14}    The matter was transferred to the North Carolina Business Court as a mandatory complex business case on 29 November 2006, and subsequently assigned to me.

{15}    On 7 March 2007, the Moving Defendants served their first set of discovery. They served a second set of discovery on 21 March 2007.

{16}    On 22 June 2007, Plaintiffs filed a Motion for a Protective Order.

{17}    Plaintiffs filed their First Amended Complaint on 27 June 2007 which, among other things, joined additional Defendants.

{18}    The Moving Defendants filed their Motion to Compel on 16 July 2007.

{19}    On 1 August 2007, the Court heard oral argument by telephone on the discovery motions.

## V.

## THE FACTS

{20}    Plaintiffs allege the following facts in their Amended Complaint:

A.

THE PARTIES

{21}    Plaintiffs reside in Travis County, Texas.  (Am. Compl. ¶ 1.)

{22}    UMLIC-Five is or was a North Carolina corporation with its principal place of business in Mecklenburg County, North Carolina.  (Am. Compl. ¶ 2.)

{23}    Moving Defendant United Mortgage & Loan Investment, LLC ("UMLI") is a North Carolina limited liability company with its principal place of business in Mecklenburg County, North Carolina.  UMLI is the parent entity of UMLIC-Five. (Am. Compl. ¶ 3.)

{24}    Moving Defendant Arthur E. Kechijian ("Kechijian") resides in Mecklenburg County, North Carolina, and was at all relevant times a director of UMLIC-Five.  (Am. Compl. ¶ 4.)

{25}    Moving Defendant Larry E. Austin ("Austin") resides in Mecklenburg County, North Carolina, and was at all relevant times a director of UMLIC-Five. (Am. Compl. ¶ 5.)

{26}    Defendant UMLIC-Seven Corp. ("UMLIC-Seven") is a North Carolina corporation with its principal place of business in Mecklenburg County, North Carolina.  UMLIC-Seven is a successor-in-interest to UMLI.  (Am. Compl. ¶ 6.)

{27}    Defendant UMLIC Consolidated, Inc. ("UMLIC Consolidated") is a South Carolina corporation formerly known as UMLIC SC, Inc.  UMLIC Consolidated is the parent entity of UMLIC-Seven.  (Am. Compl. ¶ 7.)

{28}    Defendant United Mortgage C.B., LLC ("United Mortgage C.B.") is a North Carolina limited liability company with its principal place of business in Mecklenburg County, North Carolina.  United Mortgage C.B. is a transferee of certain assets from, or a successor to, UMLIC-Five.  (Am. Compl. ¶ 8.)

{29}    Defendant UMLIC VP, LLC ("UMLIC VP") is a North Carolina limited liability company with its principal place of business in Mecklenburg County, North Carolina.  UMLIC VP's sole member is United Mortgage C.B.  (Am. Compl. ¶ 9.)

{30}    Defendant United Mortgage Holdings, LLC is a North Carolina limited liability company.  (Am. Compl. ¶ 10.)

{31}     Defendant UMLIC Holdings, LLC is a Delaware limited liability company authorized to transact business in North Carolina. (Am. Compl. ¶ 11.)

{32}     Defendant Kechijian Investments, L.P. is a Georgia limited partnership that transacts business in North Carolina. (Am. Compl. ¶ 12.)

{33}     Defendant Austin Investments, L.P. is a Georgia limited partnership that transacts business in North Carolina. (Am. Compl. ¶ 13.)

{34}     Defendant AEK, LLC is a North Carolina limited liability company. (Am. Compl. ¶ 14.)

{35}     Defendant LEA, LLC is a North Carolina limited liability company. (Am. Compl. ¶ 15.)

{36}     Defendant Summatyme, LLC is a North Carolina limited liability company. (Am. Compl. ¶ 16.)

B.

THE CLAIMS

{37}     In 1995, Plaintiffs filed suit against UMLIC-Five in the District Court for Travis County, Texas, alleging, among other things, that UMLIC-Five wrongfully foreclosed upon their home and unlawfully attempted to evict them. (Am. Compl. ¶ 19.)

{38}     Plaintiffs allege in this case that Defendants (and in particular Moving Defendants Kechijian and Austin) directly controlled the activities of UMLIC-Five at all relevant times, including throughout the course of the Texas Litigation. (Am. Compl. ¶¶ 32–50.)

{39}     According to Plaintiffs, the Texas Litigation spanned eleven years, with UMLIC-Five vigorously defending the claims against it and giving Plaintiffs and their counsel the impression that it was an active, functioning entity. (Am. Compl. ¶ 23.)

{40}     Without notifying Plaintiffs, however, UMLIC-Five filed Articles of Dissolution with the North Carolina Secretary of State on 23 October 2001. Thereafter, UMLIC-Five continued to defend the Texas Litigation. Plaintiffs allege

that at no time during the ensuing four-and-a-half years did Defendants disclose to Plaintiffs that UMLIC-Five had been dissolved. (Am. Compl. ¶¶ 24–25.)

{41} Plaintiffs further allege that Defendants willfully failed to provide the appropriate statutory notices of dissolution to UMLIC-Five's creditors pursuant to North Carolina law. (Am. Compl. ¶ 27.)

{42} Plaintiffs also allege that Kechijian and Austin were directors of UMLIC-Five and, as such, owed Plaintiffs a fiduciary duty to establish a reserve for payment of the Texas Judgment. (Am. Compl. ¶¶ 51–55.)

{43} According to Plaintiffs, Kechijian and Austin exercise complete control and domination over the affairs of the other Defendants. (Am. Compl. ¶¶ 32–50.) As Plaintiffs describe it, Kechijian and Austin have played a "corporate shell game" among the various Defendant entities, designed to shield assets from creditors and "insulate and shield themselves from liability arising from their fraudulent and wrongful conduct[.]" (Am. Compl. ¶ 49.)

{44} On or about 10 March 2006, UMLIC-Five abandoned its defense of the Texas Litigation. (Am. Compl. ¶ 29.)

{45} Plaintiffs thereafter obtained a $3.8 million judgment against UMLIC-Five. (Am. Compl. ¶¶ 22, 30.)

{46} The Texas Judgment contains findings of fact and conclusions of law regarding Plaintiffs' substantive claims. Among other things, the Texas court determined that UMLIC-Five was guilty of willful and wanton violations of Texas law related to its attempt to foreclose on Plaintiffs' home. The Texas court also found that UMLIC-Five abused the discovery process in Texas in an effort to hinder Plaintiffs' prosecution of the Texas Litigation. (Am. Compl. ¶ 22, Ex. A.)

{47} The Texas Judgment includes an award of $1.4 million in actual damages, $1.4 million in punitive damages, and $1 million in attorney fees. (Am. Compl. ¶ 22, Ex. A.)

{48} On 26 October 2006, Plaintiffs filed suit in this state against UMLIC-Five seeking to domesticate and enforce the Texas Judgment. *See Lawrence v. UMLIC-*

*Five Corp.*, No. 06-20926 (N.C. Super. Ct. Mecklenburg Co.). That matter is not before me.

{49}    On 24 May 2007, the Honorable Robert C. Ervin granted Plaintiffs' motion in that case to enforce the Texas Judgment. UMLIC-Five has appealed that order.

{50}    Plaintiffs' Amended Complaint in this case alleges claims against Defendants for (1) breach of fiduciary duty, (2) fraudulent transfers of UMLIC-Five's assets, and (3) violations of the requirements of Chapter 55 of the North Carolina General Statutes by failing to notify Plaintiffs in writing of UMLIC-Five's dissolution.

{51}    Plaintiffs also seek to pierce the corporate veil to reach Defendants' personal assets. (Am. Compl. ¶¶ 68–69.)

VI.

PRINCIPLES OF LAW

A.

THE SCOPE OF DISCOVERY

{52}    Under Rule 26 of the North Carolina Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . . ." N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (2005).

{53}    The purpose of Rule 26 is "to facilitate the disclosure prior to trial of any unprivileged information that is relevant and material to the lawsuit so as to permit the narrowing and sharpening of the basic issues and facts that will require trial." *Am. Tel. & Tel. Co. v. Griffin*, 39 N.C. App. 721, 726, 251 S.E.2d 885, 888 (1979).

B.

THE ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT EXCEPTIONS

{54}    The attorney-client privilege is one of the oldest and most revered privileges for confidential communications recognized by the common law. *Ford*

*Motor Co. v. Leggat*, 904 S.W.2d 643, 647 (Tex. 1995).[2] The purpose of this privilege "'is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App 18, 31, 541 S.E.2d 782, 790 (2001) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

{55}    "Among communications privileges, [the attorney-client privilege] is the only one recognized by every state, even though its scope . . . may vary." *Ford Motor Co.*, 904 S.W.2d at 647. Both North Carolina and Texas extend the protection of the attorney-client privilege to confidential communications between a client and his or her lawyer for the purpose of obtaining legal advice. *See Evans*, 142 N.C. App. at 32, 541 S.E.2d at 791; *In re Valero Energy Corp.*, 973 S.W.2d 453, 457 (Tex. App. 1998).

{56}    Except in very narrow circumstances, the attorney-client privilege prohibits the disclosure of confidential information, no matter how relevant it might be to the claims or defenses in the litigation. *See In re Investigation of the Death of Miller,* 357 N.C. 316, 327–28, 584 S.E.2d 772, 781–82 (2003).

{57}    The work-product rule protects "facts developed by [an attorney] in preparation of the case or opinions he has formed about any phase of the litigation." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999). Work product is shielded from discovery unless the party seeking the material demonstrates a "substantial need" for it and "undue hardship" should he be required to obtain its substantial equivalent by other means. N.C. Gen. Stat. § 1A-1, Rule 26(b)(3) (2005).

{58}    Regardless, materials containing the mental impressions or opinions of an attorney are always protected from disclosure. *Willis v. Duke Power Co.,* 291 N.C. 19, 36, 229 S.E.2d 191, 201 (1976). Similarly, Texas law provides that work product

---

[2] Some of the information sought by the Discovery Requests is in the hands of Plaintiffs' Texas counsel and was the subject of a motion to compel in that state. For that reason, the parties have relied in their briefs on Texas and North Carolina authorities discussing the scope of the attorney-client privilege and work-product doctrines. Because the Court has found no discernible difference in how these courts apply the privilege in the context of a discovery dispute, it has considered cases from both jurisdictions.

is only discoverable if it does not constitute the mental impressions of an attorney, and the party seeking discovery can make the requisite showing of "substantial need" and "undue hardship." Tex. R. Civ. P. 192.5(a)–(b) (2007).

{59} Finally, most courts hold "that work product prepared in anticipation of earlier litigation retains its protection in later disputes." *See e.g., Cincinnati Ins. Co. v. Zurich Ins. Co.*, 198 F.R.D. 81, 86 (W.D.N.C. 2000).

C.

PLAINTIFFS' CLAIMS

1.

BREACH OF FIDUCIARY DUTY

{60} Plaintiffs' First Claim for Relief alleges breach of fiduciary duty.

{61} A corporate director owes a fiduciary duty to the corporation. *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 26, 560 S.E.2d 817, 822 (2002). "As a general rule, directors of a corporation do not owe a fiduciary duty to creditors of the corporation." *Id.* at 29–30, 560 S.E.2d at 824 (quoting *Whitley v. Carolina Clinic, Inc.*, 118 N.C. App. 523, 526, 455 S.E.2d 896, 899 (1995)). Thus, in most instances where a director breaches a fiduciary duty, the action is properly maintained by the corporation rather than an individual creditor. *Id.* at 26, 560 S.E.2d at 822 (citing *Underwood v. Stafford*, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967)).

{62} In certain circumstances, however, corporate directors may owe a fiduciary duty to creditors of the corporation. The circumstances under which a director's fiduciary obligations extend to creditors have been limited to those situations "amounting to a 'winding up' or dissolution of the corporation." *Id.* at 31, 560 S.E.2d at 825 (quoting *Whitley*, 118 N.C. App. at 528, 455 S.E.2d at 900).

{63} Where a director owes a fiduciary duty to a creditor of the corporation, a breach occurs if the director takes advantage of his position for his own benefit at the expense of the creditor. *Id.* at 30, 560 S.E.2d at 824. "Once the fiduciary duty arises, a director must treat all creditors of the same class equally by making any payments to such creditors on a pro rata basis." *Id.* at 33, 560 S.E.2d at 827.

2.

## RECOVERY OF FRAUDULENT CONVEYANCES

{64}    Plaintiffs' Second Claim for Relief seeks equitable relief under the North Carolina Uniform Fraudulent Transfer Act ("the UFTA"), codified in North Carolina General Statute sections 39-23.1–23.12 (2005).

{65}    Under the UFTA:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> b. Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.C. Gen. Stat. § 39-23.4(a).

{66}    Further, the UFTA provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

*Id.* § 39-23.5(a).

{67}    In an action for relief under the UFTA:

> [A] creditor . . . may obtain . . . [a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim [and] [a]n attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure

prescribed by Article 35 of Chapter 1 of the General Statutes. . . . If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

*Id.* § 39-23.7.

3.

FAILURE TO GIVE NOTICE OF DISSOLUTION

{68}    Plaintiffs' Third Claim for Relief alleges that Defendants failed to give proper notice of UMLIC-Five's dissolution.

{69}    A dissolved corporation may dispose of any known claims against it by notifying its creditors of the dissolution.  N.C. Gen. Stat. § 55-14-06 (2005).  Such notice must be in writing and contain the following information:  1) a description of the claim, 2) an address where the claim may be sent, 3) a deadline, not less than 120 days from the effective date of the notice, by which the dissolved corporation must receive the claim, and 4) a statement that the claim will be barred if not received by the deadline.  *Id.*

{70}    If a creditor fails to assert its claim within the time period specified, the claim is extinguished.  *Id.*

{71}    However, where a corporation fails to notify a known creditor of its dissolution, the creditor is not barred from pursuing its claim, *Id.* official ct., and may do so against either the corporation or its shareholders.  *Id.* § 55-14-08.

4.

PIERCING THE CORPORATE VEIL

{72}    Finally, Plaintiffs' Fourth Claim for Relief seeks to pierce the corporate veil as to all Defendants.

{73}    North Carolina courts follow the "instrumentality rule" when deciding whether to disregard the corporate entity for the purpose of piercing the corporate veil.  *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985).  Under the instrumentality rule, a party must satisfy three elements before the corporate veil can be pierced.  *Id.* at 454–55, 329 S.E.2d at 330.  First, the individuals or other

entities involved must have exercised complete control over the corporate entity such that the corporate entity had "no separate mind, will, or existence of its own." *Id.* at 455, 329 S.E.2d at 330. Second, such control must have been used to commit fraud, violate a legal duty, or otherwise harm the plaintiff. *Id.* Finally, the act complained of must be the proximate cause of the plaintiff's injuries. *Id.*

{74} Generally, courts only consider the following four factors in determining whether to pierce the corporate veil: (1) inadequate capitalization, (2) non-compliance with corporate formalities, (3) complete domination of the corporate entity, and (4) excessive fragmentation of a single enterprise into separate corporations. *Id.* at 455, 329 S.E.2d at 330–31.

{75} The conduct of the party seeking to pierce the corporate veil is typically not relevant to the analysis. *See id.* Instead, courts focus on the actions of the corporate entity and the extent to which others exercised control over it. *See id.*

{76} However, in *Swan Quarter Farms, Inc. v. Spencer*, 133 N.C. App. 106, 514 S.E.2d 735 (1999), the North Carolina Court of Appeals refused to grant a party's request to pierce the corporate veil because the party seeking such relief came to the transaction with "unclean hands." *Id.* at 109–10, 514 S.E.2d 737–38.

{77} The court in *Swan Quarter Farms* noted that piercing the corporate veil is an equitable remedy, and is to be used only to protect innocent parties. *Id.* at 110, 514 S.E.2d at 738. Thus, *Swan Quarter Farms* suggests the actions of a corporation and those exercising control over it are not the only relevant inquiry as to whether the corporate veil should be pierced. Instead, because a "piercing" theory of liability seeks to invoke a court's equitable jurisdiction, the conduct of the party seeking the remedy may also be relevant.

## D.

## COLLATERAL ESTOPPEL

{78} Plaintiffs' claim that the issues resolved in the Texas Judgment should not be relitigated in this case essentially raises the bar of collateral estoppel.

{79} Collateral estoppel "prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different

cause of action between the parties or their privies." *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986).

{80}    For collateral estoppel to bar a party's subsequent claim:

> (1) the issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.

*McCallum v. N.C. Coop. Extension Serv.*, 142 N.C. App. 48, 54, 542 S.E.2d 227, 233 (2001) (quoting *King v. Grindstaff*, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973)).

{81}    Although North Carolina courts have not addressed the doctrine of collateral estoppel in the context of a piercing claim, several other courts have. *See Welborn v. Mountain Accessories Corp.*, 23 F. Supp. 2d 1321 (D. Wyo. 1998); *In re L & S Indus., Inc.*, 122 B.R. 987 (Bankr. N.D. Ill. 1991); *Pacetti v. United States*, 50 Fed. Cl. 239 (2001); *Comm'r of Envt'l Prot. v. Conn. Bldg. Wrecking Co.*, 629 A.2d 1116 (Conn. 1993); *Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co.*, 513 S.E.2d 692 (W. Va. 1998).

{82}    These courts hold that while officers, directors, and shareholders generally are not considered privies of a corporation, where such a party asserts extensive ownership or control over the corporate entity and, in particular, where that party actively participates in the prior litigation against the corporation, collateral estoppel may preclude the party from relitigating any issue that was previously litigated and decided as to the corporation. *See Pacetti*, 50 Fed. Cl. at 246; *In re L& S Indus.*, 122 B.R. at 993; *Comm'r of Ent'l Prot.*, 629 A.2d at 1126–27; *Jordache Enters.*, 513 S.E.2d at 705–07.

{83}    The Moving Defendants seek to counter the application of collateral estoppel in this case by arguing that the Texas Judgment is tainted by fraud.

{84}    To avoid the collateral estoppel effect of a foreign judgment on that ground, a party must prove extrinsic fraud. Proof of intrinsic fraud, that is, fraud arising within the proceeding itself and concerning some matter considered by the

foreign court on the merits, will not suffice to impeach the foreign judgment. *See Courtney v. Courtney*, 40 N.C. App. 291, 298–99, 253 S.E.2d 2, 6 (1979) (citing *Horne v. Edwards*, 215 N.C. 622, 624, 3 S.E.2d 1 (1939)).

VII.

ANALYSIS

{85}    The Discovery Requests can be grouped into two categories. The first seeks information related to the analysis of Plaintiffs and their Texas counsel as to the value of the claims in the Texas Litigation. For example, the Moving Defendants seek all documents related to any calculation or assessment of the value of Plaintiffs' claims in the Texas Litigation. A separate request demands all documents received from or sent to Plaintiffs' Texas counsel, or any other representative of Plaintiffs, addressing or relating to the settlement value or potential outcome of the Texas Litigation. (Defs. Mot. Compel 5.)

{86}    The second category of requests seeks discovery of the facts supporting the amount of the Texas Judgment. A representative example is the Moving Defendants' request that Plaintiffs identify all healthcare professionals from whom they received medical treatment for emotional distress as a result of the actions or omissions of UMLIC-Five in the Texas Litigation. (Defs. Mot. Compel 7.)

{87}    In the Court's view, the first category of information appears to be immune from discovery, either because it is privileged or subject to work-product protection. Indeed, whether analyzed under North Carolina or Texas law, Plaintiffs' analysis of the value of their claims and their discussions with counsel regarding this issue are precisely what the attorney-client privilege and work-product doctrine are designed to shield from disclosure.

{88}    Even more fundamentally, however, both categories are not relevant to the issues as framed by the pleadings, nor are they reasonably calculated to lead to the discovery of admissible evidence.

{89}    The Moving Defendants contend they need the discovery to defend against Plaintiffs' substantive claims in this action. For example, as to Plaintiffs' claim for

breach of fiduciary duty, the Moving Defendants say that the Discovery Requests are relevant to determining the amount that a reasonable director would have established as a reserve for Plaintiffs' claim in the Texas Litigation. Similarly, the Moving Defendants say they need the discovery to support their equitable defense of "unclean hands" in response to Plaintiffs' attempt to pierce the corporate veil.

{90} The Court addresses these arguments in the context of the two categories of requests at issue in this case. As to information otherwise privileged or properly classified as opinion work product, the law sets a virtually absolute bar to disclosure absent a waiver. The Moving Defendants do not argue waiver in their moving papers, and the Court finds no evidence of waiver on this record.[3]

{91} In any event, what Plaintiffs and their counsel may have discussed as to the value of their claims in the Texas Litigation is not relevant to the claims or defenses in this action.

{92} The Moving Defendants' papers first focus on the importance of the Discovery Requests to the claim for breach of fiduciary duty lodged against Moving Defendants Kechijian and Austin, arguing that the requested information is relevant in determining "the amount of money or assets, if any, that UMLIC-Five's directors purportedly should have preserved in connection with the Plaintiffs' pending claims in the Texas Litigation during the winding up of UMLIC-Five." (Defs. Mot. Compel 6.)

{93} The Moving Defendants misread the allegations of the Amended Complaint. Plaintiffs do not allege in their pleading that Kechijian and Austin failed (as UMLIC-Five directors) to set aside a sufficient sum to pay their claim; rather, Plaintiffs allege that these Defendants made **no** provision for their claim, choosing instead to disburse the assets of UMLIC-Five to themselves and other shareholders. (Am. Compl. ¶¶ 53–54.)

---

[3] Defendants have taken the deposition of Plaintiffs' Texas counsel and, as noted earlier, have also compelled the production of counsel's file in the Texas Litigation. The Court does not view Plaintiffs' compliance with such a court order as a waiver of any applicable privilege in these proceedings. *See generally United States v. Nobles,* 422 U.S. 225, 239–40 (1975) (holding that implied waiver of work-product protection can occur when a party attempts to make a testimonial use of otherwise protected materials).

{94}     Whatever the merits of this allegation, what Plaintiffs and their counsel may have believed the claim to be worth at the time of the Texas Litigation is not relevant to this claim or its defense, nor is it likely to lead to the discovery of admissible evidence.

{95}     The relevance of the Discovery Requests is even more attenuated as to the statutory claim arising from UMLIC-Five's alleged failure to give notice of dissolution.  The notice provisions of North Carolina General Statute Chapter 55 are designed to protect a creditor who is not aware of a corporate debtor's dissolution.  Under the statute, proper notice triggers a process for filing of claims by creditors and the orderly resolution of those claims.  The failure to give notice, however, means that a creditor may pursue its claim against the debtor corporation and its shareholders.  N.C. Gen. Stat. § 55-14-08 (2005).

{96}     As applied here, UMLIC-Five's alleged failure to give notice of dissolution means only that Plaintiffs' claims arising from the Texas Litigation are not otherwise barred.  As a practical matter, this result means nothing as to UMLIC-Five because Plaintiffs already have a judgment against that entity.

{97}     Plaintiffs also seek to impose the Texas Judgment on the Moving Defendants because of the lack of notice.  As was the case with Plaintiffs' claim alleging breach of fiduciary duty, however, the Court fails to see how Plaintiffs' assessment of the value of the Texas Litigation, and their related discussions with Texas counsel, are relevant to the question of whether the notice statute was violated.

{98}     Similarly, the Discovery Requests are not relevant to Plaintiffs' claim seeking to avoid certain fraudulent conveyances.  Under the UFTA, a transfer is fraudulent if it is made with the intent to hinder, delay, or defraud a creditor.  N.C. Gen. Stat. § 39-23.4(a)(1) (2005).  Likewise, a transfer is fraudulent if it is made without receiving "reasonably equivalent value" in exchange for the transfer, and the debtor is either insolvent at the time of the transfer or rendered insolvent by the transfer.  *Id.* § 39-23.5(a).

{99}    Relief under the UFTA is predicated on a party's status as a creditor at the time of the allegedly improper transfer. *See id.* § 39-23.4(a).  The UFTA defines a creditor as any person who has a right to payment "whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 39-23.1(3)–(4).

{100}   Accordingly, the relevant discovery inquiry as to this claim is not what Plaintiffs' and their counsel discussed regarding the value of the Texas Litigation, but simply whether (1) Plaintiffs were UMLIC-Five's creditors as that term is defined in the UFTA; and (2) the other named Defendants in fact received fraudulent transfers from UMLIC-Five.

{101}   Defendants also argue that they need the disputed discovery to demonstrate Plaintiffs' "unclean hands" so as to rebuff Plaintiffs' attempt to pierce the corporate veil.  On this issue, however, the only potentially relevant inquiry as to Plaintiffs' "piercing" claim (and Defendants' "unclean hands" defense) is not what Plaintiffs and their counsel may have discussed as to the value of their claims in the Texas Litigation, but what facts (if any) support the judgment entered in that case.

{102}   At first glance then, the Moving Defendants' attempt to discover the facts supporting the Texas Judgment appears to have merit.  Indeed, *Swan Quarter Farms* holds that the actions of a party seeking to pierce the corporate veil are relevant in determining whether equity compels such a result.  133 N.C. App. at 110, 514 S.E.2d at 738.

{103}   However, a closer look at the evidentiary burdens assigned to each party on the piercing claim, as well as the procedural posture of the Texas Judgment in North Carolina, leads the Court to conclude that the disputed discovery is not warranted under Rule 26.

{104}   First, it will be Plaintiffs' burden to establish a basis for piercing UMLIC-Five's corporate veil. *See Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985).  If Plaintiffs fail in their proof, then it does not matter whether there are

facts to support the Texas Judgment because none of Defendants (save UMLIC-Five) will be liable for it.

{105} On the other hand, if Plaintiffs satisfy their burden as to the piercing claim, they will have necessarily shown that the Moving Defendants thoroughly dominated the affairs of UMLIC-Five. If so, and if, in fact, the Texas Judgment works a collateral estoppel, the Moving Defendants would be barred from contesting the merits of the Texas Judgment in this case. *See Welborn v. Mountain Accessories Corp.*, 23 F. Supp. 2d 1321 (D. Wyo. 1998); *In re L & S Indus., Inc.*, 122 B.R. 987 (Bankr. N.D. Ill. 1991); *Pacetti v. United States*, 50 Fed. Cl. 239 (2001); *Comm'r of Envt'l Prot. v. Conn. Bldg. Wrecking Co.*, 629 A.2d 1116 (Conn. 1993); *Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co.*, 513 S.E.2d 692 (W. Va. 1998). As a result, whether there was a sufficient factual basis for entry of the Texas Judgment would be irrelevant.

{106} Thus, the predicate question is whether the Texas Judgment, entered after UMLIC-Five abandoned its defense of the Texas Litigation, should be accorded full collateral estoppel effect. The Court concludes that it should.

{107} While North Carolina's state appellate courts have not addressed this particular question, a recent federal court opinion provides persuasive guidance.

{108} In *Frahm v. Macik*, 2007 U.S. Dist. LEXIS 23831 (W.D.N.C. Mar. 29, 2007), the court held that a default judgment can have preclusive effect on subsequent litigation where a party appeared and litigated a matter, but a default judgment was subsequently entered against him for discovery violations. *Slip op.* at 8–9. According to the court, the relevant question for purposes of collateral estoppel is whether the party to be bound had a full and fair opportunity to litigate "but, by his volition, terminated his opportunity." *Id.* at 16.

{109} The Texas Judgment satisfies this standard in spades. To say that UMLIC-Five had a full and fair opportunity to litigate the issues in the Texas Litigation would be an understatement; in fact, it did so for over eleven years before choosing to abandon its defense. Moreover, as in *Frahm,* the Texas court made a specific finding that UMLIC-Five engaged in discovery violations aimed at

thwarting Plaintiffs' recovery.  On these facts, the Court has little trouble concluding that the Texas Judgment is entitled to full preclusive effect.

{110}  Finally, the Court acknowledges that collateral estoppel does not bar a party from impeaching a judgment tainted by extrinsic fraud.  *See Crescent Hat Co. v. Chizik*, 223 N.C. 371, 374, 26 S.E.2d 871, 873 (1943).

{111}  Here, however, the Moving Defendants allege that Plaintiffs made false statements to the Texas court regarding the extent of their damages in the Texas Litigation.  North Carolina law is clear, however, that "false testimony given at trial is not extrinsic fraud, and thus cannot form the basis of an attack upon a foreign judgment."  *Courtney v. Courtney*, 40 N.C. App. 291, 299, 253 S.E.2d 2, 6 (1979).

{112}  The Court also takes judicial notice of the procedural posture of UMLIC-Five's separate attempt to impeach the Texas Judgment in this state.

{113}  On 24 May 2007, Judge Robert C. Ervin entered an order in *Lawrence v. UMLIC-Five Corp.*, No. 06-20926 (N.C. Super. Ct. Mecklenburg Co.), domesticating the Texas Judgment and finding expressly that it was not tainted by fraud, whether extrinsic or otherwise.

{114}  This Court must honor that result here as to UMLIC-Five.  And for reasons I have already discussed, if Plaintiffs are able to pierce UMLIC-Five's corporate veil in this case, the Moving Defendants too would be bound by Judge Ervin's order.  Either way, the discovery sought by the Moving Defendants is not relevant to the claims or defenses here, nor is it likely to lead to the discovery of admissible evidence in this case.

VIII.

CONCLUSION

{115}  Based on the foregoing, the Court **DENIES** the Moving Defendants' Motion to Compel and **GRANTS** Plaintiffs' Motion for a Protective Order.


**SO ORDERED**, this the 14th day of September, 2007.